[No. 29814. Department One. July 8, 1946.]

THE STATE OF WASHINGTON, *Respondent,* v. ORVAL SWAN, *Appellant.*[1]

[1]Reported in 171 P. (2d) 222.

*Ray R. Greenwood,* for appellant.

*Frederick B. Cohen* and *W. U. Park,* for respondent.

MILLARD, J.—Trial of defendant on a charge of manslaughter alleged to have been committed June 2, 1945, resulted in verdict of guilty as charged. This appeal is from the judgment entered on the verdict.

The first assignment is that the trial court erred in permitting the state, over objection, to impeach one of its witnesses, thereby bringing to the attention of the jury irrelevant and hearsay testimony, which supplied the only evidence the state had to prove appellant's guilt of the crime charged.

Appellant and his family of four children and his housekeeper, one Edna Gideon, who married appellant following his arrest on the charge of manslaughter, lived on Bainbridge island, in Kitsap county. Sidney Hill, the deceased in this case, also resided on Bainbridge island.

The afternoon of Saturday, June 2, 1945, appellant and his housekeeper went to a tavern on the island, where they met Coral Paez, Vera Slossen, and Sidney Hill. The parties drank a copious amount of beer and wine and were more or less affected by the intoxicants. As they left the tavern, where they had spent two or three hours, with the intention

of going to the home of Mrs. Paez and later gather at the home of appellant and have a meal, appellant was quarreling with his housekeeper. When Hill championed her cause, appellant attacked him. One Roy Reagan, a friend of Hill, stopped the fight by hitting appellant with a bottle. Hill weighed about one hundred thirty-five pounds, or forty pounds less than appellant, who was a much younger man than Hill.

The group arrived at the home of Mrs. Paez about 9:45 p. m., when Hill and appellant seemed to have forgotten the fight. Later in the evening, however, appellant and Hill were quarreling. The cause of their controversy is not material to this action. Appellant testified that, with his fist, he struck Hill in the left jaw. Sometime during the fight, Hill and appellant were both on the floor, from which appellant arose and departed for home with Mrs. Gideon, his housekeeper. Hill was still on the floor. The only persons present during the affray were appellant, Edna Gideon (now appellant's wife), Sidney Hill, and Richard Sands, a boy fourteen years of age.

Sands testified that appellant hit Edna Gideon, and, when Hill tried to stop him by placing a hand on appellant's shoulder, Sands, realizing the imminence of a fight, immediately went into the other room to get his mother, Mrs. Paez. He never saw appellant hit Hill. When Sands returned to the room where the fight was staged, appellant was straightening up from Hill's body. Appellant then knocked Mrs. Gideon down and shoved Mrs. Slossen down to the floor. His attempt to continue the brawl by fighting Mrs. Paez failed because the woman hit him with a coffee pot, which stopped him. Appellant then took Mrs. Gideon out of the house, and they went home.

Sidney Hill was never seen to move after he fell to the floor as a result of his collision with appellant's fist. Photographs of Hill's body, in the same position on the floor as it was after appellant struck him, show numerous bruises upon the left side of the face and throat of deceased.

To sustain the state's case in chief, there was no evidence from which it was reasonably inferable that appel-

lant struck the deceased except the testimony of Richard Sands. He testified that, when Sidney Hill assumed the role of peacemaker in appellant's quarrel with Edna Gideon, Hill placed his hand on appellant's shoulder, apparently in an endeavor to induce appellant to not again strike the woman. Sands then went into the next room to get his mother, and, on immediately returning to the scene of the quarrel, he saw Hill on the floor, and appellant was straightening up from Hill's body. That evidence was sufficient to sustain the verdict. Appellant admitted that he struck Hill.

Richard Sands, called as a witness on behalf of the state, testified on direct examination that he never saw appellant strike Hill. Counsel for the state then suggested to the witness that he think the matter over very carefully, whereupon the witness replied, "No, he didn't. I am very sure of it."

In the attempted impeachment by the state of its witness, the following occurred:

"Q. You recall telling me,—Mr. Greenwood: Just a minute. I object. The Court: Objection sustained. Mr. Cohen: I have a complete statement taken the next morning. There had been several things. The Court: You have to prove something before you can impeach him. You haven't proved anything. Mr. Cohen: I will make it in the absence of the jury. It's merely the statements he made to me. Q. Do you recall talking to me the next morning? That was before Sid Hill's body was moved? A. Yes, I believe it was. Q. I talked to you in the living room? A. Yes. Q. You later went into the kitchen? A. I guess so. I don't remember. Q. Did you tell me the whole story at that time? Mr. Greenwood: Objected to—irrelevant, immaterial. He can't impeach his own witness. The Court: Sustained. Mr. Cohen: I have here a complete statement taken from the boy the next morning. Mr. Greenwood: I object to the reading of that statement. The Court: You can claim surprise but you can't impeach him, unless there are admissions sufficient on which to found a case of impeachment. Mr. Cohen: I want to ask him what he told me the next morning. The Court: Go ahead. I'll limit you to that. Ask him what he told you the next morning. Q. I'm going to ask you if you told me this, the next morning. Mr. Greenwood:

My objection still goes to his reading that statement. I don't know what it is. THE COURT: He'll not read it.

"Q. I am going to ask you if I asked you this question the next morning: 'When you came back, Sidney was down and Orval was hitting him?' And then your answer: 'Sidney was on his side.' Remember that? (Reading from statement) A. Yes. Q. 'How was Orval standing when he was hitting him?' (Reading) MR. GREENWOOD: If Your Honor please, that is not fair. They were putting words in his mouth. THE COURT: Objection sustained. This is a fourteen year old boy. Those questions are not fair to a fourteen year old boy. MR. COHEN: I think the next answer would clarify it. MR. GREENWOOD: I object to that—object to any further statement along that line. (Mr. Cohen handing statement to court at court's request) THE COURT: Objection sustained. (Examining statement) MR. COHEN: Your Honor please, I'd like to read further down here. THE COURT: There is one question there—two questions there, you may ask him. MR. COHEN: Your Honor must appreciate these were taken at the scene of the, — THE COURT: There are only two statements which tend to impeach him. You may ask him about those two. (Court handing statement to counsel)

"Q. I am going to ask you whether or not,—do you recall my asking you this question: 'How many times did you see Orval hit Sidney after Sidney was down?' And your answer: 'He hit him at least two or three times.' Do you remember that? MR. GREENWOOD: Before he answers, I object to the question on the grounds he can't impeach his own witness—no proper foundation laid to impeach him. THE COURT: Overruled. MR. GREENWOOD: And the witness should be instructed to the necessity of a 'Yes' or 'No' answer. THE COURT: Objection overruled. (To Witness) Did you answer the question in the way that Mr. Cohen read it to you? THE WITNESS: What is it, again? Q. I am going to ask you if I read this question to you and you gave me this answer, the next morning. 'How many times did you see Orval hit Sidney after Sidney was down?' And your answer: 'He hit him at least two or three times.' Do you remember my asking you that question and your giving me that answer, the next morning? A. Yes, I think so. Q. You did tell me that. I am going to ask you if I asked you this question and you gave me this answer, the next morning: Question, 'Were they good solid punches?' Answer, 'He was really swinging hard.' Do you remember me asking

that question and you giving me that answer? MR. GREEN-
WOOD: Same objection to these questions. THE COURT:
Same ruling. Q. Do you remember that? Do you remember
answering that way? (By the Court) A. I can't be sure.
Q. Let me ask you this: Has your memory been refreshed
to any extent that you can tell us whether or not you saw
Orval Swan hit Sidney Hill that night in the kitchen? THE
COURT: Did you see him strike Sidney Hill down? THE
WITNESS: I didn't actually see Orval hit him but when I
came back from the living room, he was straightening up
from his body. THE COURT: You didn't actually see him hit
him? THE WITNESS: No. Q. Did you see him swing? MR.
GREENWOOD: That is part of the hitting—objected to as
leading—highly leading. THE COURT: No, no, he may an-
swer. Exception allowed.

"Q. Did you see Orval Swan swing at Sid Hill when he
was down? A. (No response) THE COURT: To the best of
your recollection, Richard. You are on oath and you want to
be sure that you give testimony according to your best
recollection. A. Well, when I was standing in the living
room, I couldn't be sure,—couldn't be sure of seeing him
hitting him out of the corner of my eye, but I seen some
action. I couldn't be sure. THE COURT: When you went out
in the kitchen,—THE WITNESS: He was just straightening
up. THE COURT: Sid was on the floor? THE WITNESS: Yes.
THE COURT: You don't know what he was straightening up
from? THE WITNESS: No, he was just straightening up. Q.
Was he straightening up before you went into the living
room to call your mother or after? A. After. Q. How long
were you gone? A. Long enough to go in there and yell a
couple of times and come back."

In *State v. Bossio,* 136 Wash. 232, 239 Pac. 553, witnesses
called by the state testified they did not know or could not
remember facts to which they had testified on a former trial.
We held that, in the absence of a claim of surprise by the
state, it was error to allow the state to impeach the wit-
nesses by reading their former testimony and asking if they
had not so testified. We said:

"This was in effect getting before the jury the testimony
which they had given on a former trial which was not in
opposition to the testimony that they had given upon this
trial, because here they simply, as stated, said that they did
not remember or could not say. In the absence of surprise

at an affirmative statement by a witness prejudicial to the interests of the party calling him, there exists no basis for his impeachment."

In *State v. Catsampas*, 62 Wash. 70, 112 Pac. 1116, we held that, in a criminal prosecution, where a witness for the state had testified that he did not know what the accused had said after the fight, it was prejudicial error for the state to attempt to impeach the witness by showing that he had made other statements to the prosecuting attorney; since it did not affect his credibility as to any affirmative statement made by him, and only had the effect of getting before the jury alleged declarations of a discredited witness. We said:

"From the foregoing it will be seen that this is not a case where a party offering a witness is taken by surprise by reason of an affirmative statement by said witness prejudicial to its interest; but this was simply a negative statement on the part of the witness, which in itself was in no degree prejudicial. The only contention is that the witness did not state the case as strongly as the attorneys for the state desired, or as they claimed he had stated it to them. There was nothing detrimental to the state's interest in what he did say. The complaint is in regard to what he did not say."

While, of course, impeaching evidence is permissible under the rule that a party, who has been surprised at the unfavorable testimony of a witness he has called on his own behalf, may ask such witness whether he has not made contradictory statements at other times and places, and, if the witness denies it, show by other evidence that he has made such statements, a party will not be permitted to impeach his own witness by showing that he made contradictory statements at other times, where the witness did not give testimony unfavorable to him, but merely failed to testify as favorably as was expected.

"Impeachment is for the purpose of showing that a witness is untrustworthy and unreliable, and the right can be invoked only by a litigant against whom the testimony is injurious. To permit a party to show that, on other occasions, his witness has made statements more favorable to him than he made when a witness on the stand, would be to

permit him to fill in the gaps in his proof by testimony that has not the sanction of any witness; in other words, it would be to permit a party to prove his case by hearsay testimony." *Ferris v. Todd,* 124 Wash. 643, 215 Pac. 54.

 The impeachment by the state of its own witness constitutes prejudicial error. The state was not taken by surprise by reason of an affirmative statement by its witness prejudicial to the interest of the state; but the statement of the witness was a negative one, which in itself was in no degree prejudicial to the state. The only basis for the state's impeachment of the witness was that the witness did not state the case as strongly as counsel for the state claimed the witness had stated to the state's attorney. There was nothing detrimental to the state's interest in what he did say. The complaint of the state is in regard to what the witness did not say.

Counsel for appellant contends that the following language of counsel for the state in his closing argument to the jury constituted prejudicial error.

"And I admit to you, frankly and honestly—that I'm coming out here without an autopsy surgeon and it's like walking into a boxing ring with both hands tied behind my back. The fact that the autopsy surgeon has left,— Mr. Greenwood: I object to that. Enough said about that. The jury is to be guided only by what is in the testimony. The Court: Overruled. Mr. Cohen: There is a kind of testimony you can bring in and a kind you can't. We've been handicapped. We can't call a man's wife to testify against him. They know it. There was only one person in the kitchen with the defendant and the dead man and only one person who could tell this story, defendant's wife, and she wasn't called to the stand. Mr. Greenwood: I object to that statement. I make my objection and ask the privilege of taking it to the Supreme Court,—highly prejudicial. The Court: Overruled. Mr. Greenwood: Exception."

 The statement of the prosecuting attorney to the jury that he could not produce an autopsy report disclosing the cause of death of Hill because of circumstances over which he had no control, was prejudicial. The objection to that line of argument should have been sustained. We find no-

where in the record a demand by appellant to know whether there was such evidence. There was no justification for such argument.

■ The argument of counsel for the state that there was a witness who could have testified to the facts but he could not call her as a witness because she was appellant's wife, was prejudicial. In effect, he told the jury that appellant was guilty of concealing evidence which would be helpful to the state.

The statute (Rem. Rev. Stat., § 1214 [P.P.C. § 38-9]) provides that a husband shall not be examined for or against his wife without the consent of the wife, nor a wife for or against her husband without the consent of the husband. There inheres in this statute the mandatory provision that no inference of guilt shall arise from the failure of a wife to testify for or against her husband, or for a husband to testify for or against the wife. It follows that the full protective force of the statute is not secured if the silence of the wife be construed against the husband in a criminal action like the case at bar. The remarks of the prosecuting attorney upon the failure of appellant to waive the privilege, which was his, of not permitting his wife to testify against him, constituted prejudicial comment.

■ Counsel for the state violated the spirit of the provision of the constitution, Art. I, § 9, that no person shall be compelled in a criminal case to give evidence against himself. If counsel for the state be permitted to comment to the jury on the failure of a defendant to testify in a criminal case, or to comment on the refusal of a defendant to waive the privilege afforded him by the statute (Rem. Rev. Stat., § 1214), the full protective force of the constitution (Art. I, § 9) that no person shall be compelled in a criminal case to give evidence against himself, and the provision of the statute that a wife may not testify for or against her husband without his consent, would be insecure.

The judgment is reversed, and the cause remanded with direction to the trial court to grant the motion for a new trial.

BEALS, C. J., STEINERT, and SIMPSON, JJ., concur.

MALLERY, J. (concurring in the result)—The testimony: "No, he didn't. I am very sure of it," meaning from its context that the appellant did not strike the deceased, is not negative testimony. It is an affirmative defense to the action and is subject to impeachment. See *State v. Bogart,* 21 Wn. (2d )765, 153 P. (2d) 507.

I concur in the result of the opinion.

