[No. 44934.   En Banc.   October 12, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. DERRICK A. CHARLTON, *Petitioner.*

*Lembhard G. Howell,* for petitioner (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *James A. Trujillo* and *Mary Kay Barbieri, Deputies,* for respondent.

HAMILTON, J.—This case arises out of a conviction for violation of RCW 69.50.401(a), unlawful possession of a dangerous drug with intent to deliver. The Court of

Appeals, in an unpublished per curiam opinion, affirmed the conviction. *State v. Charlton,* 16 Wn. App. 1043 (1977). We granted discretionary review and reverse.

Petitioner Derrick Charlton was employed as a corrections officer by the King County Department of Public Safety. In September 1975, the King County police received information from a jail inmate named George that petitioner was smuggling narcotic drugs into the jail and delivering them to prisoners. This information led to an investigation. Satisfied by the investigation that petitioner was involved in illicit activity, the police set up a transaction designed to apprehend him.

In order to execute the planned apprehension of petitioner, a police officer told the inmate informant to contact petitioner and ask for his help in smuggling narcotics—specifically heroin—into the jail. The informant was to tell petitioner to meet a black woman named Loretta, who would be wearing blue jeans, a red sweater, and sunglasses at a specified tavern. In addition, the informant was to promise to pay petitioner $40 for his services in picking up the heroin and returning it to him in the jail.

To complete this scheme, the King County police enlisted the aid of a black female police agent. She was instructed to wear blue jeans, a red sweater, sunglasses, and to go to the tavern to await contact from petitioner. Police provided her with a bindle of heroin marked and concealed in a cigarette package, as well as $40 in marked money.

On the prearranged night, the agent, clad as instructed, entered the tavern and police surveillance began. Petitioner arrived, parked and exited his automobile, leaving a passenger, his wife, inside the car. He then entered the tavern, walked to the back, and turned around. He started to exit when apparently he caught sight of the police agent. According to the State's testimony, petitioner approached her and asked: "Do you have something for me?" The agent, handing him the cigarette package, replied, "Yes, George [the informant] told me to give this to you." Petitioner took it and said, "Is this all?" She then gave him the

$40, whereupon he folded it into his pocket and again asked, "Is this all?" When the agent answered in the affirmative, petitioner left the tavern without further conversation.

Petitioner was arrested as he walked toward his automobile. In searching his person police found the heroin, the marked money, and a slip of paper upon which was written: "Loretta—Black girl. Blue jeans. Red sweater. Sunglasses."

Petitioner was charged with unlawful possession of dangerous drugs with intent to deliver. At his trial the State presented testimony essentially as detailed above. The inmate informant, however, could not be located for trial and thus much of his participation came into evidence as hearsay, most of which was elicited on cross–examination of the State's witness.

Petitioner took the witness stand in his own behalf. It was his testimony that he had been asked by an inmate to stop at the tavern and pick up a phone number from a girl. Petitioner claimed the agent initiated contact with him, and, since she fit the description he had been given, he assumed she was the person with the phone number. He denied that he ever asked her if she had anything for him and claimed he did not know what the cigarette pack contained. He also disputed the State's evidence with respect to the details of his arrest.

At the close of the case, the jury heard argument from both prosecution and defense. The prosecution, on behalf of the State, argued the facts clearly indicated petitioner's guilt. Defense counsel, on petitioner's behalf, argued that the possession of heroin was entirely unwitting and commented on the failure of the State to produce the informant. In rebuttal, the prosecutor, among other things, stated: "I'll go one better. Who was there that was another witness to the arrest, the defendant could have called? Where is Mrs. Charlton?"

At the conclusion of argument, petitioner moved for a mistrial based upon the prosecutor's comment regarding Mrs. Charlton. He did not, however, request that the jury

be given a curative instruction. The Court of Appeals, relying upon *State v. Stevenson,* 16 Wn. App. 341, 555 P.2d 1004 (1976), held that failure to request such an instruction precluded urging this prosecutorial conduct as reversible error on appeal, thus affirming petitioner's conviction.

The rule set forth in *Stevenson* on which the Court of Appeals relied has also been relied upon frequently by this court. We have consistently held that unless prosecutorial conduct is flagrant and ill intentioned, and the prejudice resulting therefrom so marked and enduring that corrective instructions or admonitions could not neutralize its effect, any objection to such conduct is waived by failure to make an adequate timely objection and request a curative instruction. *State v. Morris,* 70 Wn.2d 27, 33, 422 P.2d 27 (1966); *State v. Huson,* 73 Wn.2d 660, 440 P.2d 192 (1968); *State v. Music,* 79 Wn.2d 699, 489 P.2d 159 (1971). Since petitioner did not request a curative instruction, we must examine the prosecutorial conduct involved in this case and determine whether it is flagrant and ill intentioned. If it is, petitioner has not waived his right to object to this conduct and request a new trial.

The prosecutorial conduct of which petitioner complains consists of a comment upon his exercise of the so–called marital privilege contained in RCW 5.60.060(1). It reads in pertinent part:

(1) A husband shall not be examined for or against his wife, without the consent of the wife, nor a wife for or against her husband without the consent of the husband;
. . .

RCW 5.60.060(1).

The prosecutor was unquestionably aware of this statutory privilege since it is an elementary rule of evidence. Presumably, he, like most prosecutors, was acquainted with existing and long–standing case law in which we have criticized various practices by which the jury's attention is focused upon the fact that the defendant is exercising the marital privilege. *State v. McGinty,* 14 Wn.2d 71, 126 P.2d 1086 (1942); *State v. Tanner,* 54 Wn.2d 535, 341 P.2d 869

(1959). Over 30 years ago, in *McGinty,* we condemned the prosecutor's practice of calling a defendant's spouse to the witness stand in order to force the defendant to assert the marital privilege in the jury's presence.[1]

There is little, if any, practical difference between the conduct condemned in *McGinty* and the prosecutor's comment in the instant case. Both the conduct and the comment make members of the jury critically aware that the defendant has exercised the marital privilege. Previous cases have made it clear, however, that the State is prohibited from taking actions which increase jurors' awareness of the defendant's assertion of the marital privilege. *State v. McGinty, supra; State v. Tanner, supra; State v. Swan,* 25 Wn.2d 319, 171 P.2d 222 (1946); *State v. Gant,* 6 Wn. App. 263, 492 P.2d 571 (1971); *State v. Torres,* 16 Wn. App. 254, 554 P.2d 1069 (1976).

In likening the *statutory* marital privilege to the constitutional privilege against self–incrimination, we have explained the reasoning behind this prohibition. The reasoning which sustains both the prohibition against comment upon the constitutional privilege, as well as this statutory privilege, is that the State cannot and will not be permitted to put forward an inference of guilt, which necessarily flows from an imputation that the accused has suppressed or is. withholding evidence, when by statute or constitution he simply is not compelled to produce the evidence. *State v. Tanner, supra* at 538.

In *State v. Swan, supra,* we held it was prejudicial and reversible error for a prosecuting attorney to allude to the State's legal inability to call the defendant's spouse to testify. In commenting upon the statutory marital privilege now contained in RCW 5.60.060(1), we stated that

---

[1]It has long been a rule of common law that the mere calling of one spouse as a prosecution witness in the other's criminal trial for the purpose of forcing the claim of marital privilege before the jury is improper, prejudicial, and thus reversible error. *See San Fratello v. United States,* 340 F.2d 560 (5th Cir. 1965), and *State v. McGinty,* 14 Wn.2d 71, 126 P.2d 1086 (1942).

[t]here inheres in this statute the *mandatory* provision that no inference of guilt shall arise from the failure of a wife to testify for or against her husband, or for a husband to testify for or against the wife. It follows that the full protective force of the statute is not secured if the silence of the wife be construed against the husband in a criminal action like the case at bar. The remarks of the prosecuting attorney upon the failure of appellant to waive the privilege, which was his, of not permitting his wife to testify against him, constituted prejudicial comment.

Counsel for the state violated the spirit of the provision of the constitution, Art. I, § 9, that no person shall be compelled in a criminal case to give evidence against himself. If counsel for the state be permitted to comment to the jury on the failure of a defendant to testify in a criminal case, or to comment on the refusal of a defendant to waive the privilege afforded him by the statute (Rem. Rev. Stat., § 1214), the full protective force of the constitution (Art. I, § 9) that no person shall be compelled in a criminal case to give evidence against himself, and the provision of the statute that a wife may not testify for or against her husband without his consent, would be insecure.

(Italics ours.) *State v. Swan, supra* at 327.

In petitioner's case, as in *Swan,* the prosecutor commented upon a spouse's failure to testify. As we have observed, the prosecutor certainly must have been aware of the privilege contained in RCW 5.60.060(1). Since the prosecutor was aware of the privilege, he also must have been aware that petitioner, by virtue of the privilege, was not compelled to produce his spouse for testimonial purposes. Yet the prosecutor endeavored to suggest, by means of a comment to the jury, that petitioner was concealing or withholding testimony. The inference which he anticipated the jurors might draw was that the spouse's testimony would be unfavorable to petitioner and consistent with his guilt. *Swan* clearly states such an inference is impermissible when the marital privilege has been asserted. We can only conclude, therefore, that the comment upon which it was hoped the jurors would ground the desired, impermissible

inference was mindful, flagrant, and ill–intentioned conduct. Petitioner did not, therefore, waive his right to object to conduct of this sort by failing to request a curative instruction.

■ We have carefully considered petitioner's objection to the prosecutor's comment. In now determining whether the improper comment was prejudicial and reversible error, it is necessary for us to examine the entire record. *State v. Martin,* 73 Wn.2d 616, 627, 440 P.2d 429 (1968); *State v. Gant, supra.* The question we must ask is whether there is substantial likelihood the prosecutor's comment affected the verdict. *State v. Music, supra; State v. Torres, supra.* If we are unable to say from the record before us whether the petitioner would or would not have been convicted but for the comment, then we may not deem it harmless. *State v. Martin, supra; State v. Gant, supra.*

In petitioner's case, a key prosecution witness was unavailable for trial and a substantial amount of hearsay was presented to the jury. It is entirely reasonable to believe that some jurors may have been inclined to believe petitioner's version of the incident, rather than the hearsay. But when the prosecutor inferred by means of improper comment that the only available witness who might corroborate petitioner's version of events was not called to testify, any inclination to believe petitioner may well have vanished. We are simply unable to say from our reading of the record whether the petitioner would or would not have been convicted but for the impermissible comment.

■ We hold, therefore, it was prejudicial and reversible error for the prosecutor to comment upon petitioner's exercise of the marital privilege contained in RCW 5.60.060(1). In presenting a criminal case to the jury, it is incumbent upon a public prosecutor, as a quasi–judicial officer, to seek a verdict free of prejudice and based upon reason. As we have stated on numerous occasions, the prosecutor, in the interest of justice, must act impartially, and his trial behavior must be worthy of the position he holds. Prosecu-

torial misconduct may deprive the defendant of a fair trial. And only a fair trial is a constitutional trial. *State v. Case,* 49 Wn.2d 66, 298 P.2d 500 (1956); *State v. Huson,* 73 Wn.2d 660, 440 P.2d 192 (1968); *State v. Kroll,* 87 Wn.2d 829, 558 P.2d 173 (1976).

In spite of our frequent warnings that prejudicial prosecutorial tactics will not be permitted, we find that some prosecutors continue to use improper, sometimes prejudicial means in an effort to obtain convictions. In most of these instances, competent evidence fully sustains a conviction. Thus, we are hard pressed to imagine what, if anything, such prosecutors hope to gain by the introduction of unfair and improper tactics.

It has been thoughtfully observed that

> [i]f prosecutors are permitted to convict guilty defendants by improper, unfair means, then we are but a moment away from the time when prosecutors will convict innocent defendants by unfair means.

*State v. Torres,* 16 Wn. App. 254, 263, 554 P.2d 1069 (1976).

A statement from *State v. Montgomery,* 56 Wash. 443, 447–48, 105 P. 1035 (1909), quoted in *State v. Torres, supra* at 264–65, summarizes the thrust of our holding today:

> It is not our purpose to condemn the zeal manifested by the prosecuting attorney in this case. We know that such officers meet with many surprises and disappointments in the discharge of their official duties. They have to deal with all that is selfish and malicious, knavish and criminal, coarse and brutal in human life. But the safeguards which the wisdom of ages has thrown around persons accused of crime cannot be disregarded, and *such officers are reminded that a fearless, impartial discharge of public duty, accompanied by a spirit of fairness toward the accused, is the highest commendation they can hope for.* Their devotion to duty is not measured, like the prowess of the savage, by the number of their victims.

(Italics ours.)

Petitioner's conviction is reversed, and the case is remanded for a new trial. This disposition makes it unnecessary to consider other alleged trial errors, none of which standing alone would warrant a new trial.

WRIGHT, C.J., and ROSELLINI, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.