[No. 75106-4.   En Banc .]
Argued June 30, 2004.     Decided December 23, 2004.

THE STATE OF WASHINGTON, *Petitioner*, v. LEEMAH CARNEH, *Respondent*.

SANDERS, J., ALEXANDER, C.J., and JOHNSON, J., dissent in part by

separate opinion; MADSEN, J., did not participate in the disposition of this case.

*Norm Maleng*, Prosecuting Attorney, and *Roger S. Davidheiser*, *James J. Konat*, and *James M. Whisman*, *Deputies*, for petitioner.

*Louis A. Frantz* and *Carl F. Luer* (of *Associated Counsel for the Accused*), for respondent.

¶1 BRIDGE, J. — On March 15, 2001, Leemah Carneh was charged with four counts of aggravated first degree murder. Carneh notified the court of his intent to rely on the defense of insanity and submitted to psychological examinations by defense experts. The trial court ordered Carneh to also submit to examinations by experts at Western State Hospital (WSH), but when interviewed, Carneh refused to answer questions where he believed the answers might incriminate him. Carneh relied on RCW 10.77.020(3), which allows defendants being examined by court appointed experts as the result of an insanity plea to refuse to provide potentially incriminating answers. Consequently, the WSH experts could not form an opinion as to Carneh's sanity at the time of the crimes.

¶2 The State moved to exclude all evidence of Carneh's alleged insanity at trial as a remedy for Carneh's refusal to answer. The trial court denied the motion but concluded that in explanation of the experts' inability to form an opinion as to Carneh's sanity, the WSH experts could reveal to the jury that Carneh had refused to answer certain questions. The State now argues that, as a remedy for his refusal to answer questions, the trial court should have prohibited Carneh from presenting evidence of his insanity. Carneh seeks cross-review of the portion of the trial court order that permitted the State to refer to Carneh's silence in front of the jury.

¶3 We affirm the order of the trial court and hold that Carneh may introduce evidence of his alleged insanity even though he has refused to answer certain questions posed by the WSH experts. We also hold that evidence of Carneh's refusal to answer may be introduced at trial, though only to

the extent necessary to explain why the State's experts were unable to draw any conclusions regarding Carneh's sanity at the time of the alleged crimes. To that end, we hold that Carneh is entitled to a limiting instruction directing the jury that it may not infer sanity from Carneh's reliance on RCW 10.77.020(3).

I

Statement of Facts

¶4 Carneh is accused of shooting Richard and Leola Larson and their 17-year-old grandson, Taelor Marks, in their home. He is also accused of beating and stabbing to death Taelor's 17-year-old girl friend, Josie Peterson, during the same incident. In March 2001, Carneh was charged with four counts of aggravated first degree murder. Carneh filed a notice asserting his intent to plead not guilty by reason of insanity pursuant to RCW 10.77.030(1). During the next few months, defense experts evaluated Carneh to determine whether he was legally insane at the time of the alleged crimes. In interviews with the defense experts, Carneh discussed specific details related to the charged crimes. Carneh produced a summary of the experts' testimony, notes, and documents as part of discovery. Two of the three defense experts have indicated they will testify that Carneh was insane at the time of the charged crimes. The third expert will testify only generally as to Carneh's mental illness; she will not render an opinion as to his sanity at the time of the crimes.

¶5 On April 2, 2003, the State requested an order directing Carneh to submit to a sanity evaluation pursuant to RCW 10.77.060.[1] Carneh did not object to the State's request but argued that he had a right under RCW

---

[1] RCW 10.77.060(1)(a) provides, in relevant part, that

[w]henever a defendant has pleaded not guilty by reason of insanity . . . the court on its own motion or on the motion of any party shall . . . appoint . . . at least two qualified experts or professional persons, one of whom shall be approved by the prosecuting attorney, to examine and report upon the mental condition of the defendant.

10.77.020(3) to refuse to answer any question that called for an incriminating answer. RCW 10.77.020(3) states:

> Any time the defendant is being examined by court appointed experts or professional persons pursuant to the provisions of this chapter, the defendant shall be entitled to have his or her attorney present. The defendant may refuse to answer any question if he or she believes his or her answers may tend to incriminate him or her or form links leading to evidence of an incriminating nature.

The State countered that, by pleading not guilty by reason of insanity and thus putting his mental state at issue, Carneh waived his right under both the Fifth Amendment and RCW 10.77.020(3) to refuse to answer incriminating questions during the State's evaluation. Thus, if Carneh chose to invoke his right to remain silent during the State's evaluation, he should be precluded from presenting evidence at trial to support his insanity defense.

¶6 After considering these arguments, the trial court concluded:

> It . . . seems to me that [if RCW 10.77.020(3)] provides the defendant with the right [not to answer incriminating questions,] that it would not, likewise, punish him for choosing to assert that right.
>
> So, I would hold that the defendant may, if he chooses, refuse to answer questions which he believes the answer to which might incriminate him or lead to incriminating evidence against him; and, likewise, that his refusal to so answer questions would not result in a restriction of his right to assert the insanity defense.

Verbatim Report of Proceedings (VRP) (Apr. 2, 2003) at 37. After this ruling, the State argued that if Carneh refused to answer questions during the evaluation, he should be prohibited from cross-examining the State's experts at trial about their lack of firsthand information regarding Carneh's state of mind at the time of the crime. On that issue the court concluded:

> Well, I will cross that bridge when we get to it. One, I don't

know what the defendant's responses are going to be when he is interviewed; two, I don't know if the doctors are going to say in light of whatever information they do get—

VRP (Apr. 2, 2003) at 40.

¶7 Following the hearing, the trial court entered an order directing Carneh to submit to a sanity evaluation by court appointed experts. The order specifically permitted Carneh's counsel to assist Carneh with invoking his right to refuse to answer incriminating questions under RCW 10.77.020(3). However, the trial court order did not specify what action, if any, would be taken if Carneh refused to answer questions necessary to successfully complete the court ordered evaluation.

¶8 The court ordered sanity evaluation began at WSH on April 25, 2003, with Carneh's counsel present. The questions posed to Carneh during the first interview focused primarily on his background. Carneh declined to answer one question, indicating that his reason for doing so was because the question had to do with the facts of the alleged crimes.

¶9 The second interview occurred on April 30, 2003, again with Carneh's counsel present. Approximately one-half hour into the interview, one of the WSH experts, Dr. Steven Marquez, asked Carneh to talk about the day of the alleged crimes. At that point Carneh's counsel informed Dr. Marquez that Carneh would not discuss his motivation, thoughts, feelings, and perceptions related to the alleged crimes for fear that such discussion might incriminate him. Soon thereafter the interview was terminated.

¶10 As a consequence of Carneh's refusal to answer such questions, the State filed a motion seeking to prevent Carneh from "presenting evidence and/or expert testimony on the issue of his sanity at the time of the commission of the crimes charged." Clerk's Papers (CP) at 36. At the hearing on the motion to suppress, Dr. Marquez testified that he did not believe he could ethically or professionally render an opinion about Carneh's sanity. The State main-

tained its position that Carneh waived his right under RCW 10.77.020(3) to refuse to answer incriminating questions by pleading not guilty by reason of insanity. Because Carneh waived that right, the State asserted that Carneh's silence should result in the exclusion of evidence at trial supporting his insanity plea.

¶11 In response, Carneh argued that the State's motion to suppress evidence was essentially a motion for reconsideration of the trial court's April 2, 2003 ruling and, thus, the motion was time-barred. Carneh further asserted, as he had at the April 2, 2003 hearing, that RCW 10.77.020(3) provided him the unambiguous right to refuse to answer incriminating questions, and he should not be punished for exercising that right.

¶12 The trial court held that it had reserved ruling on the appropriate remedy in the event that Carneh exercised his right under RCW 10.77.020(3), and so the State's motion to suppress was not time-barred. On May 13, 2003, the trial court entered an order denying the State's motion to suppress. In its findings of fact and conclusions of law supporting the order, the trial court held:

> [T]he State may introduce evidence at trial that during the State's sanity evaluation Mr. Carneh, on the advice of counsel, refused to answer all questions posed to him regarding the facts of the alleged offenses or regarding his thoughts, feelings and motivations at the time of the alleged offenses.

CP at 62.

¶13 The State filed a notice for discretionary review in the trial court on May 13, 2003. Carneh opposed review, but if review were granted, he sought cross-review of the trial court's ruling permitting the State to introduce evidence of his refusal to answer questions. The trial court supported discretionary review by certification pursuant to RAP 2.3(b)(4). The Court of Appeals, Division One, granted review of both the State's motion for discretionary review and Carneh's cross-motion. We granted Carneh's motion to transfer the case to this court pursuant to RAP 4.4.

## II

## Analysis

■ ¶14 We review a trial court's conclusions of law in an order pertaining to suppression of evidence de novo. *State v. Mendez*, 137 Wn.2d 208, 214, 970 P.2d 722 (1999). Because there are no factual issues in dispute, we review only the trial court's legal conclusions.

### Timeliness of the State's Notice for Discretionary Review

¶15 As a threshold matter, Carneh contends that the State's notice for discretionary review was untimely and should be dismissed because the State actually seeks review of the April 2, 2003 ruling. Because the State's notice for discretionary review was not filed until May 13, 2003, 41 days after the trial court's original ruling, Carneh argues that the filing was untimely. *See* RAP 5.2(b) ("[A] notice for discretionary review must be filed in the trial court within 30 days after the act of the trial court which the party filing the notice wants reviewed."). The State responds that it was the May 13 order, not the April 2 ruling, that determined that Carneh would be permitted to present evidence supporting his insanity defense, regardless of his refusal to answer certain questions. The State argues that its notice for discretionary review, filed on May 13, 2003, was therefore timely.

¶16 The State is correct. The trial court order at issue here is the order entered on May 13, 2003. It was that order that the trial court certified for discretionary review under RAP 2.3(b)(4). CP at 52. At the April 2, 2003 hearing, the trial court explicitly declined to decide what action, if any, would follow if Carneh were to invoke RCW 10.77.020(3) during the State's sanity evaluation. *See* VRP (Apr. 2, 2003) at 37-40. It was not until May 13, 2003 that the trial court ruled that Carneh would be permitted to present evidence at trial supporting his insanity claim, regardless of his refusal to answer questions. *See* CP at 60-62. The State

filed a notice for discretionary review the same day the order was entered. We therefore hold that the State's notice for discretionary review was timely.

## State's Motion to Exclude Evidence

¶17 Because insanity is an affirmative defense, the defendant bears the burden of proving " 'by a preponderance of the evidence that he or she was insane at the time of the offense or offenses with which he or she is charged.' " *State v. Platt*, 143 Wn.2d 242, 246, 19 P.3d 412 (2001) (quoting RCW 10.77.080). Chapter 10.77 RCW establishes the procedures for determining whether a criminal defendant was insane at the time of the commission of a charged crime. RCW 10.77.060 gives the trial court authority, either on its own motion or on the motion of any party, to order a mental health examination when a defendant has pleaded not guilty by reason of insanity. RCW 10.77.060(1)(a). A mental health evaluation under RCW 10.77.060 must be completed by at least two court appointed qualified professionals, one of whom must be approved by the prosecuting attorney. RCW 10.77.060(1)(a).

¶18 *Extent of the Right Under RCW 10.77.020(3)*: It is well settled that when a defendant pleads not guilty by reason of insanity, and proffers evidence in support of that plea, statements uttered in the context of a psychiatric examination by defense experts are beyond the reach of the Fifth Amendment right against self-incrimination. *State v. Pawlyk*, 115 Wn.2d 457, 465-66, 800 P.2d 338 (1990) (citing *State v. Bonds*, 98 Wn.2d 1, 20, 653 P.2d 1024 (1982), *cert. denied*, 464 U.S. 831 (1983)); *accord State v. Hutchinson*, 135 Wn.2d 863, 876, 959 P.2d 1061 (1998) (*Hutchinson* II); *State v. Jones*, 99 Wn.2d 735, 749, 664 P.2d 1216 (1983). In addition when a defendant raises an insanity defense, the court may order the defendant to submit to a sanity examination by court appointed or State experts without violating his or her constitutional privilege against self-incrimination. RCW 10.77.060(1)(a); *see also Bonds*, 98

Wn.2d at 20; *Hutchinson II*, 135 Wn.2d at 876; *Pawlyk*, 115 Wn.2d at 466.

¶19 However, RCW 10.77.020(3) also delineates rights for a defendant who has been ordered to submit to an evaluation. The statute provides that the defendant is entitled to have his or her attorney present and he or she may refuse to answer any question if the defendant believes the answer may tend to be incriminating or form links leading to evidence of an incriminating nature. RCW 10.77.020(3). Thus, once a defendant is ordered to submit to a mental health evaluation under RCW 10.77.060, the rights under RCW 10.77.020(3) apply.

¶20 The State argues that the trial court erred when it refused to exclude evidence supporting Carneh's claim of insanity. According to the State, the statutory right against self-incrimination contained in RCW 10.77.020(3) is a mere codification of the constitutional right against self-incrimination under the Fifth Amendment. Thus, the State contends that the statutory protection against self-incrimination under RCW 10.77.020(3), like the constitutional protection, is waived when a defendant pleads not guilty by reason of insanity. The State asserts that as a result, a defendant like Carneh who refuses to answer critical questions during a court ordered sanity evaluation should be prevented from presenting evidence at trial to support his insanity defense.

¶21 In response, Carneh argues that the statutory right against self-incrimination under RCW 10.77.020(3) is separate and distinct from the constitutional right. According to Carneh, RCW 10.77.020(3) unambiguously gives a defendant the right, during a court ordered sanity evaluation, to refuse to answer questions he or she believes call for incriminating answers. Thus, Carneh asserts, the trial court correctly denied the State's motion to suppress his evidence supporting insanity.

¶22 We have not previously discussed how to interpret and apply RCW 10.77.020(3) where, as here, a trial court orders a defendant who has pleaded not guilty by reason of

insanity to submit to a sanity evaluation requested by the State. However, we have addressed similar issues arising from mental-condition defenses. *See Pawlyk*, 115 Wn.2d at 466-67; *Hutchinson* II, 135 Wn.2d at 877-78.

¶23 The State relies heavily on *Pawlyk* to support its argument that RCW 10.77.020(3) is coextensive with the constitutional right against self-incrimination. But *Pawlyk* actually supports the opposite proposition, namely that RCW 10.77.020(3) provides a right that is separate and distinct from the constitutional right. In *Pawlyk* the defendant pleaded not guilty by reason of insanity to two counts of aggravated first degree murder. *Pawlyk*, 115 Wn.2d at 460-61. Pursuant to his plea, two psychiatrists interviewed the defendant at his request. *Id.* at 460. The State subsequently contacted one of the psychiatrists as a prospective witness and learned he had interviewed the defendant. *Id.* at 461. Thereafter the State moved to discover, among other things, the psychiatrist's written reports. The State also served the psychiatrist with a subpoena to testify. *Id.* The trial court denied the defendant's motion to quash the subpoena and ordered discovery of the psychiatrist's written reports. *Id.* On his motion for interlocutory review to this court, the defendant argued that the State's use of the psychiatrist as an expert and the disclosure of his reports violated the defendant's right against self-incrimination. *Id.* at 465. We disagreed and reaffirmed our holding in *Bonds*, 98 Wn.2d at 20, where we found that when a defendant proffers an insanity defense, statements uttered during a psychiatric examination are removed from the reach of the Fifth Amendment. *Pawlyk*, 115 Wn.2d at 465-66.

¶24 The defendant in *Pawlyk* also claimed that the statutory privilege against self-incrimination under former RCW 10.77.020(4) (now RCW 10.77.020(3)[2]) prohibited the State's use of the psychiatrist and/or his reports at trial. *Id.* at 466-67. We again disagreed, noting that former RCW

---

[2] RCW 10.77.020 was amended by Laws of 1998, chapter 297, section 30, which recodified subsection (4) as subsection (3).

10.77.020(4) applied only to court ordered evaluations and recognizing that the psychiatrist's examination was conducted at the defendant's request. *Id.*

█ ¶25 There is nothing in *Pawlyk* to indicate that we interpreted RCW 10.77.020(4) as a mere codification of the Fifth Amendment right against self-incrimination. Indeed, the different analytical approaches we used to resolve the defendant's constitutional and statutory claims indicate an understanding that the right under RCW 10.77.020(3) is separate and distinct. Thus, the *Pawlyk* court's holding that a defendant's *constitutional* right against self-incrimination is diminished when he or she pleads not guilty by reason of insanity has no application here, as Carneh was explicitly invoking his *statutory* right when he refused to answer incriminating questions during the court ordered sanity evaluation.

¶26 Moreover, in *Hutchinson* II this court recognized the distinct nature of the rights established in RCW 10.77.020(3). In that case we addressed a defendant's right against self-incrimination in the context of a court ordered mental health evaluation where the defendant had raised a diminished capacity defense. *Hutchinson* II, 135 Wn.2d at 876-80. We clarified our previous opinion, *State v. Hutchinson*, 111 Wn.2d 872, 766 P.2d 447 (1989) (*Hutchinson* I), in which we held that a defendant could invoke former RCW 10.77.020(4) to refuse to answer questions at a mental health evaluation:

> A defendant who pleads not guilty by reason of insanity and is examined under RCW 10.77 has a statutory right to "refuse to answer any question if he . . . believes his . . . answers may tend to incriminate him . . . or form links leading to evidence of an incriminating nature." The statutory privilege against self-incrimination is strictly construed and applies only to psychiatric evaluations of a defendant conducted under RCW 10.77, not in diminished capacity cases.

*Hutchinson* II, 135 Wn.2d at 878 (quoting RCW 10-.77.020(4) and citing *State v. Pawlyk*, 115 Wn.2d at 467). *Hutchinson* II did not discuss RCW 10.77.020(3) in the

context of a court ordered sanity evaluation of a defendant who has pleaded not guilty by reason of insanity; however, that case, like *Pawlyk*, recognizes that RCW 10.77.020(3)'s right is separate and distinct from the state and federal constitutional rights against self-incrimination.[3]

¶27 The language of RCW 10.77.020(3) is strikingly clear; it grants a defendant who is subject to a court ordered sanity evaluation an unqualified right to "refuse to answer any question if [the defendant] believes his or her answers may tend to [be incriminating] or form links leading to evidence of an incriminating nature." RCW 10.77.020(3). We conclude that the right expressed in RCW 10.77.020(3) extends beyond the constitutional rights against self-incrimination in that the statutory right is not waived when a defendant pleads not guilty by reason of insanity. The trial court correctly recognized that by its plain language, RCW 10.77.020(3) permitted Carneh, during the court ordered sanity evaluation, to refuse to answer questions that he believed called for incriminating answers. There is no basis, either in the language of the statute or in case law discussing the statute, to support the State's argument that by pleading not guilty by reason of insanity Carneh waived his statutory right under RCW 10.77.020(3).

¶28 *Impact of a Defendant's Invocation of the Statutory Right*: The State argues that because Carneh has refused to answer questions that are necessary to complete the independent sanity evaluation, the defendant should be prevented from introducing evidence or expert opinion testi-

---

[3] The State also relies on *Hickey v. Morris*, 722 F.2d 543, 547 (9th Cir. 1983), to support its proposition that the statutory right is no more extensive than the constitutional right. In that case, the Ninth Circuit cited former RCW 10.77.020(4) for its assertion that under Washington law, the Fifth Amendment privilege against self-incrimination would allow a defendant to refuse to answer questions during a court ordered sanity evaluation. *Id.* at 547. But *Hickey* did not analyze the extent of a defendant's right under former RCW 10.77.020(4). Instead the *Hickey* court evaluated the constitutionality of the procedures for confinement and release under chapter 10.77 RCW. *Id.* at 544. The court explained that because criminal defendants receive protections not available to civil committees, equal protection did not require civil committees and criminal defendants to be subject to the same commitment procedures. *Id.* at 547. Because, the *Hickey* court mentions former RCW 10.77.020(4) only in passing and does not specifically analyze the extent of the right, that case does not support the State's argument.

mony on the issue of his sanity at the time of the charged crimes. The State relies exclusively on *Hutchinson* II to support this proposition, but that reliance is misplaced. In *Hutchinson* II, the trial court excluded defense expert testimony supporting the defendant's diminished capacity claim because the defendant repeatedly refused to submit to a court ordered mental health examination. 135 Wn.2d at 872, 876. On appeal this court affirmed the trial court's decision, but only after considering the proper remedy for the defendant's discovery violation in the context of CrR 4.7, not RCW 10.77.020. *Id.* at 881-82. As noted above, the *Hutchinson* II court expressly held that former RCW 10.77.020(4) did not apply to diminished capacity cases. *Id.* at 878.

¶29 In contrast, prior to Carneh's court ordered sanity examination, the trial court specifically ruled he could invoke RCW 10.77.020(3) by refusing to answer incriminating questions. CP at 25. We reject the State's argument that Carneh's silence should result in the exclusion at trial of evidence supporting his insanity defense. We agree with the trial court that if Carneh had the right under RCW 10.77.020(3) to refuse to answer incriminating questions during the court ordered evaluation, his exercise of that right cannot result in his being barred from presenting evidence supporting his insanity defense. Thus, the trial court correctly denied the State's motion to suppress.

### Introduction of Evidence that Carneh Invoked His Statutory Privilege

¶30 The trial court ruled that the WSH experts could explain to the jury why they were unable to form an opinion as to Carneh's sanity. Specifically, the trial court would allow the experts to reveal that Carneh invoked his statutory right to refuse to answer incriminating questions.[4] We agree that fairness requires the trial court to allow the

---

[4] In doing so, the trial court relied on *State v. Jones*, 111 Wn.2d 239, 759 P.2d 1183 (1988) and *State v. Huson*, 73 Wn.2d 660, 440 P.2d 192 (1968). However, neither case is directly on point. In *Jones*, this court affirmed a defendant's

State's experts to explain their inability to form an opinion. The statutory scheme under chapter 10.77 RCW contemplates that a court appointed expert, approved by the State, will examine a defendant who has indicated an intent to rely on insanity as a defense. The defendant's statutory right against self-incrimination must be balanced against the State's statutory right to an independent sanity evaluation. *Compare* RCW 10.77.020(3) *with* RCW 10.77-.060(1)(a). If under the statute, the defendant can refuse to answer key questions in the ordered examination, then absent legislative direction to the contrary, we conclude that the State must be allowed to explain to the jury why independent experts were unable to form an opinion.

¶31 Carneh asserts that permitting the State to use the defendant's decision to exercise the RCW 10.77.020(3) right against him at trial would undermine the right itself and defeat the purpose of the statute. However, we do not agree that Carneh's exercise of his statutory right will be used *against* him. The State will not refer to his silence for the purposes of leading the jury to infer sanity. Instead, the State seeks only to explain the WSH experts' failure to form an opinion as to an issue raised by Carneh himself, namely his sanity at the time of the crimes. Any natural tendency for the jury to infer sanity from Carneh's silence can be cured by a limiting instruction, should such an instruction be sought by the defense. *See, e.g.,* 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 6.32, at 143 (2d ed. 1994) ("You are not to draw any inference from the fact that a witness does not testify [as to any particular subject matter] because of a claim of privilege sustained by the court." (alteration in original)).

conviction despite testimony by a State expert referring to the defendant's exercise of his Fifth Amendment right to refuse to answer questions during a court ordered sanity evaluation. 111 Wn.2d at 247-50. However, in that case the court concluded that the defendant had opened the door to the State's expert's comments. *Id.* at 249. Similarly, *Huson* was decided before the enactment of RCW 10.77.020(3) and thus fails to take into account the right established by that statute. *See Huson,* 73 Wn.2d at 667-68 (reasoning that defendant did not have a constitutional right not to answer questions in a court ordered sanity evaluation).

¶32 Carneh refers to cases in which this court has held that the State may not invite a jury to infer guilt from a criminal defendant's exercise of his constitutional right to remain silent or his exercise of a statutory privilege. *See, e.g., State v. Easter*, 130 Wn.2d 228, 241, 922 P.2d 1285 (1996) (improper reference to defendant's prearrest silence); *State v. Charlton*, 90 Wn.2d 657, 660, 585 P.2d 142 (1978) (improper reference to the exercise of the marital privilege); *State v. Swan*, 25 Wn.2d 319, 326, 171 P.2d 222 (1946) (same); *State v. McGinty*, 14 Wn.2d 71, 76-77, 126 P.2d 1086 (1942) (same); *Sumpter v. Nat'l Grocery Co.*, 194 Wash. 598, 600, 78 P.2d 1087 (1938) (improper reference to the exercise of the doctor patient privilege). However, in each of these cases, the State referred to the defendant's exercise of a right or privilege *for the purpose of inciting the jury to infer guilt. Easter*, 130 Wn.2d at 242 (officer's testimony was "elicited to insinuate Easter's guilt"); *Charlton*, 90 Wn.2d at 663 ("[T]he prosecutor endeavored to suggest . . . that petitioner was concealing or withholding testimony."); *Swan*, 25 Wn.2d at 327 ("In effect [counsel for the State] told the jury that appellant was guilty of concealing evidence which would be helpful to the state."); *McGinty*, 14 Wn.2d at 79 (holding the State's questions regarding the timing of the marriage and fact that the State forced the defendant to invoke the marital privilege in front of the jury "tended to make it appear to the jury that appellant had married her to prevent her from giving testimony"); *Sumpter*, 194 Wash. at 602 ("[T]o permit counsel to comment on the exercise of such privilege, would enable him to incite the jury to draw inferences adverse to the protection afforded by the statute."). This case is distinguishable because the State seeks to refer to the defendant's silence only for the purpose of explaining why the State's experts were unable to form an opinion as to Carneh's sanity at the time of the crimes. Therefore, we affirm the trial court and hold that the State's experts may refer to Carneh's invocation of his statutory right. However, if requested, the trial court must instruct the jury that it

may not infer sanity from Carneh's refusal to answer incriminating questions.

## III

## Conclusion

¶33 We conclude that the trial court ruled correctly in this case. The State's notice for discretionary review was filed within the 30-day limit and thus was timely. RCW 10.77.020(3) creates a statutory privilege that is separate and distinct from the constitutional right against self-incrimination. Thus, a defendant may refuse to answer potentially incriminating questions posed by the State's experts, and he may invoke this privilege without impacting his ability to present evidence to support his insanity plea. Evidence of Carneh's refusal to answer questions posed by WSH experts is admissible, but only for the purpose of explaining why the WSH experts were unable to form conclusions regarding Carneh's sanity at the time of the charged crimes. The jury may not infer sanity from Carneh's refusal to answer, and Carneh is entitled to a limiting instruction to that effect.

IRELAND, CHAMBERS, OWENS, and FAIRHURST, JJ., and HOUGHTON, J. Pro Tem., concur.

¶34 SANDERS, J. (concurring in part/dissenting in part) — I concur with the majority that the State's notice for discretionary review was timely, that the rights guaranteed by RCW 10.77.020(3) are broader than the constitutional right against self-incrimination under the fifth amendment to the United States Constitution, and that Leemah Carneh did not waive his right to present evidence of insanity by asserting his rights under this statute. However, I would hold that the State cannot comment on Carneh's assertion of that right because such a comment necessarily infers that Carneh is withholding information—information that RCW 10.77.020(3) specifically privileges him not to pro-

duce. Because the majority sanctions the State's improper commentary on Carneh's assertion of his statutory right to remain silent, I must dissent.

¶35 The majority claims "[t]he State will not refer to his silence for the purposes of leading the jury to infer sanity," and that "[a]ny natural tendency for the jury to infer sanity from Carneh's silence can be cured by a limiting instruction." Majority at 288. The majority identifies, but does not discuss, analogous cases where we have forbidden the State to comment on a defendant's exercise of either statutory or constitutional privileges not to speak. Majority at 289. The majority distinguishes these cases only by restating its assertion that the State "seeks to refer to the defendant's silence only for the purpose of explaining why the State's experts were unable to form an opinion as to Carneh's sanity at the time of the crimes." Majority at 289. But the majority ignores the inescapable conclusion from the cases cited: allowing the State to comment on defendant's exercise of his right to remain silent necessarily incites the jury to infer guilt.

¶36 It is generally a violation of due process for the State to introduce evidence at trial that a defendant exercised his or her constitutional right to remain silent. *See Doyle v. Ohio*, 426 U.S. 610, 619, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976); *State v. Fricks*, 91 Wn.2d 391, 395-96, 588 P.2d 1328 (1979). This court has applied the same general rule to a defendant's exercise of a statutory right. *See, e.g., State v. Charlton*, 90 Wn.2d 657, 664-65, 585 P.2d 142 (1978) (holding State's improper comment on defendant's exercise of marital privilege under RCW 5.60.060(1) was reversible error); *State v. Tanner*, 54 Wn.2d 535, 538, 341 P.2d 869 (1959) (same); *State v. Swan*, 25 Wn.2d 319, 327, 171 P.2d 222 (1946) (same, although marital privilege was codified under different statute); *State v. McGinty*, 14 Wn.2d 71, 78-80, 126 P.2d 1086 (1942) (same); *Sumpter v. Nat'l Grocery Co.*, 194 Wash. 598, 602-05, 78 P.2d 1087 (1938) (recognizing defendant may not comment on plaintiff's exercise of physician-patient privilege).

¶37 In *Charlton* this court likened the statutory marital privilege to the constitutional privilege against self-incrimination and stated:

> The reasoning which sustains both the prohibition against comment upon the constitutional privilege, as well as this statutory privilege, is that the State cannot and will not be permitted to put forward an inference of guilt, which *necessarily flows* from an imputation that the accused has suppressed or is withholding evidence, when by statute or constitution he simply is not compelled to produce the evidence.

*Charlton*, 90 Wn.2d at 662 (emphasis added). That same reasoning applies here with equal force.

¶38 This court acknowledged in *Charlton* that an inference of guilt "necessarily flows" from the State's commenting on the assertion of a statutory privilege. Permitting the State to comment at trial on Carneh's decision to exercise his statutory right to refuse to answer incriminating questions during the State's sanity evaluation undermines the right itself and substantially defeats the purpose of the statute.

¶39 We should reverse the trial court's decision permitting the State to introduce evidence at trial that Carneh exercised his right under RCW 10.77.020(3) and refused to answer incriminating questions during the State's sanity evaluation.

¶40 Because the majority allows State comments which, under our case law, necessarily imply guilt, I respectfully dissent.

ALEXANDER, C.J., and JOHNSON, J., concur with SANDERS, J.

Reconsideration denied March 10, 2005.