IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31168-6-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ELVIS CAMILLO R. LOPEZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, A.C.J. — Elvis Camillo Renteria Lopez appeals his convictions and sentences for first degree robbery, second and third degree assault, and two counts of attempting to elude a police vehicle. In a brief filed by his appellate attorney, Mr. Lopez contends the court violated his speedy trial and sentencing rights, he received ineffective assistance of counsel from his trial attorney, and the court miscalculated his offender score. In two pro se statements of additional grounds for review, Mr. Lopez expresses concerns regarding his speedy trial right, evidence sufficiency, the effectiveness of his trial attorney, prosecutorial misconduct, prosecutorial vindictiveness, and double jeopardy. We disagree with all of Mr. Lopez's contentions and concerns, except regarding his offender score. Accordingly, we affirm and remand for the limited purpose of determining Mr. Lopez's offender score and resentencing him, if necessary.

No. 31168-6-III
*State v. Lopez*

FACTS

On April 13, 2010, law enforcement arrested Mr. Lopez following an incident generally involving assaultively taking Ramona Gonzalez's car and assaulting law enforcement officers with the car during the ensuing chase. The State soon charged him with 12 crimes but amended the charges to first degree robbery of Ms. Gonzalez, second degree taking a motor vehicle without her permission, second degree assault of Benton County Sheriff's Deputy Patrick Tomren, third degree assault of Benton County Sheriff's Deputy Arin Reining, and two counts of attempting to elude a police vehicle.

A jury found Mr. Lopez guilty of all amended counts on April 26, 2012, about a month after his case was retried. Upon the State's motion, the court dismissed Mr. Lopez's conviction for taking a motor vehicle without permission because it merged with his robbery conviction. The court sentenced Mr. Lopez to 11 years of confinement on September 4, 2012.

Four successive lawyers represented Mr. Lopez in the 2 years and 10 days between his arrest and guilty verdict. A fifth lawyer represented Mr. Lopez at the end of the four months and nine days between his guilty verdict and sentencing.

The court appointed Mr. Lopez's first attorney, Gary Metro, on April 21, 2010. The court ordered an expert evaluation of Mr. Lopez's competency to stand trial on June 9, 2010, and found him competent on July 22, 2011. Meanwhile, Mr. Lopez retained a second attorney, Matthew Rutt. Mr. Rutt presented a substitution of counsel form and the court orally approved it on October 27, 2010. Mr. Rutt withdrew on March

2

30, 2011, explaining Mr. Lopez had become extremely hostile toward him and they were unable to work together. Mr. Lopez agreed to the withdrawal.

The court appointed Mr. Lopez's third attorney, Samuel Swanberg, on March 30, 2011. Mr. Lopez soon told Mr. Swanberg he did not want to work with him and would retain a different lawyer. Mr. Lopez then retained a fourth attorney, Scott Etherton. Mr. Etherton presented a substitution of counsel form and the court orally approved it on August 17, 2011. While Mr. Etherton did not file this form until December 7, 2011, he continued appearing on Mr. Lopez's behalf so that it was clear Mr. Etherton alone was representing Mr. Lopez.

On September 21, 2011, Mr. Etherton moved to continue the trial for a lengthy period, stating he needed additional time to review the voluminous discovery so he could provide effective assistance. Mr. Lopez refused to waive his speedy trial right. The court granted the continuance, reasoning Mr. Etherton needed additional time to adequately prepare. Mr. Lopez objected, demanding both a speedy trial and effective assistance of counsel.

At an omnibus hearing on October 19, 2011, Mr. Lopez presented an oral motion to dismiss the charges against him, arguing he had been forced to choose between a speedy trial and effective assistance of counsel. Tensions between Mr. Lopez and Mr. Etherton became apparent. The court instructed Mr. Lopez to present his concerns in a written motion.

On November 30, 2011, Mr. Etherton moved to continue the trial because, after the court set the trial date, he scheduled a major surgery requiring extensive recovery.

3

Mr. Lopez objected. The court eventually granted the continuance on December 7, 2011, after further discussions revealed it was necessary considering not only Mr. Etherton's surgery and recovery, but also his need for additional time to review the State's newly discovered video evidence and investigate Mr. Lopez's ongoing mental health issues. Mr. Lopez objected, asserting his speedy trial right and arguing Mr. Etherton had a conflict of interest because he needed to file a motion to dismiss but was not following Mr. Lopez's directions.

On March 2, 2012, the court granted the State's motion to continue the trial because the prosecutor was ill. Mr. Lopez objected. Trial began on March 19, 2012, and the court declared a mistrial the next day. On April 4, 2012, the court granted the State's motion to continue the retrial because a witness was unavailable. Mr. Lopez objected. Retrial began on April 23, 2012, and the jury rendered its guilty verdict three days later.

Mr. Etherton moved to continue the sentencing hearing on June 7, 2012, because he needed additional time to prepare. Mr. Lopez refused to waive his speedy sentencing right. The court granted the continuance, considering the lengthy sentence Mr. Lopez faced. On July 9, 2012, Mr. Etherton did not attend a scheduled sentencing hearing because he had unexpected car trouble and could not secure other transportation. Mr. Etherton therefore moved to continue the sentencing hearing. The court granted the continuance, reasoning it could not properly sentence Mr. Lopez without some defense counsel present. Mr. Lopez objected and filed a pro se motion to dismiss, albeit deficient in form, asserting his speedy sentencing right. Additionally, Mr.

4

Lopez argued Mr. Etherton had a conflict of interest because he needed to file a motion to dismiss but was not listening to Mr. Lopez's concerns.

Mr. Etherton moved to continue the sentencing hearing again on August 7, 2012, for various personal and professional reasons. Mr. Lopez filed a pro se motion to dismiss, essentially accusing Mr. Etherton of violating Mr. Lopez's speedy trial and sentencing rights. On its own initiative, the court put the case on hold to allow Mr. Etherton time to contemplate his ethical obligations to Mr. Lopez. Mr. Etherton withdrew on August 15, 2012, explaining the pro se motion to dismiss created a conflict of interest disqualifying him from further representing Mr. Lopez.

The court appointed Mr. Lopez's fifth lawyer, Scott Johnson, on August 15, 2012. On its own initiative, the court continued the sentencing hearing because Mr. Johnson needed time to prepare. The court finally conducted the sentencing hearing on September 4, 2012. Mr. Lopez appealed.

## ANALYSIS

### A. Speedy Trial and Sentencing

The issue is whether the court violated Mr. Lopez's speedy trial and sentencing rights. He invokes these rights as established by constitutional provisions and delineated by a statute and a court rule. *See* U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; RCW 9.94A.500(1); CrR 3.3. He contends the court abused its discretion in granting multiple continuances that prejudiced him. We review decisions granting continuances for abuse of discretion and review alleged violations of speedy trial or

sentencing rights de novo.[1] *State v. Ollivier*, 178 Wn.2d 813, 822-23, 826, 312 P.3d 1 (2013); *State v. Kenyon*, 167 Wn.2d 130, 135, 216 P.3d 1024 (2009); *State v. Campbell*, 103 Wn.2d 1, 14, 691 P.2d 929 (1984).

We begin with the speedy trial court rule. If a criminal defendant is detained in jail pending trial, a court must bring him or her to trial within the longer of 60 days from the commencement date or 30 days from the expiration of excluded periods. CrR 3.3(b)(1). The commencement date is initially the date of arraignment. CrR 3.3(c)(1). But certain events, including mistrials and disqualifications of counsel, reset the commencement date. CrR 3.3(c)(2)(iii), (vii). And certain periods, including competency proceedings, continuances, and unavoidable or unforeseen circumstances beyond control, are excluded in computing the time for trial. CrR 3.3(e)(1), (3), (8).

The court may continue the trial upon motion "when such continuance is required in the administration of justice and the defendant will not be prejudiced in the presentation of his or her defense." CrR 3.3(f)(2). "The bringing of such motion by or on behalf of any party waives that party's objection to the requested delay." *Id.* This waiver applies even where, as here, the defendant personally objects to a continuance requested by defense counsel on the defendant's behalf. *See Ollivier*, 178 Wn.2d at

---

[1] A court abuses its discretion if its decision is "manifestly unreasonable," based on "untenable grounds," or made for "untenable reasons." *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971); *see also State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) ("A decision is based on untenable grounds or made for untenable reasons if it rests on facts unsupported in the record or was reached by applying the wrong legal standard. A decision is manifestly unreasonable if the court, despite applying the correct legal standard to the supported facts, adopts a view that no reasonable person would take, and arrives at a decision outside the range of acceptable choices." (citations omitted) (internal quotation marks omitted)).

824. Because Mr. Etherton requested the challenged trial continuances in the course of representing Mr. Lopez's interests, Mr. Lopez waived his objection to those continuances.[2] Regardless, the trial court complied with the speedy trial court rule.

A court does not abuse its discretion by granting a continuance over the defendant's personal objection where, as here, defense counsel needs additional time to adequately prepare and provide effective assistance. See Ollivier, 178 Wn.2d at 824 n.2, 825 n.4 (citing Kenyon, 167 Wn.2d at 138; Campbell, 103 Wn.2d at 15). And, the same can be said where, as here, defense counsel has scheduled a major surgery requiring extensive recovery.[3] No other option existed but to continue the trial because another attorney in Mr. Etherton's law firm was not qualified to try the case alone. It was reasonable for the court to conclude these continuances were "required in the administration of justice" and not "prejudic[ial to the defendant] in the presentation of his or her defense." CrR 3.3(f)(2); see State v. Williams, 104 Wn. App. 516, 524, 17 P.3d 648 (2001).

Mr. Lopez unpersuasively argues the valid reasons for these continuances were somehow negated by a hypothetical ambiguity over who was representing him. Mr. Etherton presented a substitution of counsel form and the court orally approved it on

---

[2] Mr. Lopez does not challenge the trial continuances that the State requested. Those continuances were reasonable, considering the prosecutor's illness and a witness's unavailability. See State v. Terrovona, 105 Wn.2d 632, 651, 716 P.2d 295 (1986); State v. Greene, 49 Wn. App. 49, 55, 742 P.2d 152 (1987); CrR 3.3(f)(2).

[3] Mr. Etherton's scheduling conflict justifies a continuance. See State v. Flinn, 154 Wn.2d 193, 200, 110 P.3d 748 (2005); CrR 3.3(f)(2). Under a separate but related rule, this period of Mr. Etherton's unavailability is excluded in computing the time for trial because it resulted from an unavoidable or unforeseen circumstance beyond control. See State v. Carson, 128 Wn.2d 805, 814, 912 P.2d 1016 (1996); CrR 3.3(e)(8).

7

No. 31168-6-III
*State v. Lopez*

August 17, 2011, and Mr. Etherton filed it on December 7, 2011. Meanwhile, he

continued appearing for Mr. Lopez. Mr. Etherton alone was representing Mr. Lopez.

Considering all, the court did not abuse its discretion in granting the trial continuances

requested by Mr. Etherton while representing Mr. Lopez's interests.

A time-for-trial computation based on the analysis above shows the court brought

Mr. Lopez to trial 42 days before the deadline and did not violate the speedy trial rule:

- April 13, 2010—arrested
- April 16, 2010—arraigned on initial charges; commencement date set
- 54 out of 60 remaining days elapsed
- June 9, 2010—competency evaluation ordered; excluded period started
- October 27, 2010—counsel disqualified; commencement date reset; still in excluded period
- March 30, 2011—counsel disqualified; commencement date reset; still in excluded period
- July 22, 2011—competency finding entered; excluded period ended
- 26 out of 60 remaining days elapsed; no need to use 30-day measure following expiration of excluded period
- August 17, 2011—counsel disqualified; commencement date reset
- 35 out of 60 remaining days elapsed
- September 21, 2011—trial continuance granted upon the defense's request; excluded period started
- October 19, 2011—trial continuance granted upon the defense's request; excluded period extended
- December 7, 2011— unavoidable or unforeseen circumstances beyond control arose; trial continuance granted upon the defense's request; excluded period extended
- March 2, 2012—trial continuance granted upon the prosecution's request; excluded period extended
- March 19, 2012—trial began; excluded period ended
- one out of 25 remaining days elapsed; could use longer 30-day measure following expiration of excluded period
- March 20, 2012—mistrial declared; commencement date reset
- 15 out of 60 remaining days elapsed
- April 4, 2012—trial continuance granted upon the prosecution's request; excluded period started
- April 23, 2012—retrial began; excluded period ended

8

- three out of 45 remaining days elapsed; no need to use 30-day measure following expiration of excluded period
- April 26, 2012—guilty verdict rendered 18 days after commencement date, excluding competency proceedings, continuances, and unavoidable or unforeseen circumstances beyond control

Next, we turn to the speedy sentencing statute. A court must conduct a sentencing hearing for a criminal defendant within 40 days of a guilty verdict but may, upon motion or its own initiative, continue the hearing for "good cause." RCW 9.94A.500(1); *see* CrR 7.1(a)(1). A court has "broad discretion" in determining whether good cause exists to continue a sentencing hearing. *State v. Roberts*, 77 Wn. App. 678, 685, 894 P.2d 1340 (1995).

Again, a court does not abuse its discretion by granting a continuance over the defendant's personal objection where, as here, defense counsel needs additional time to adequately prepare and provide effective assistance. *See Ollivier*, 178 Wn.2d at 824 n.2, 825 n.4 (citing *Kenyon*, 167 Wn.2d at 138; *Campbell*, 103 Wn.2d at 15). And again, the same can be said where, as here, defense counsel is unable to attend proceedings due to unavoidable and unforeseen transportation difficulties beyond control.[4] No option existed but to continue the sentencing hearing because the court could not properly sentence Mr. Lopez without some defense counsel present. It was reasonable for the court to conclude these reasons established "good cause." RCW 9.94A.500(1).

---

[4] In so concluding, we look to authority in analogous contexts and surmise that defense counsel's unavailability ordinarily justifies a time extension if caused by some rather anomalous circumstance. *See, e.g.*, *State v. Watkins*, 71 Wn. App. 164, 174, 857 P.2d 300 (1993); *In re Det. of Kirby*, 65 Wn. App. 862, 868-69, 829 P.2d 1139 (1992); *State v. Guajardo*, 50 Wn. App. 16, 18, 746 P.2d 1231 (1987); *State v. Eaves*, 39 Wn. App. 16, 20-21, 691 P.2d 245 (1984).

The court did not abuse its discretion in granting the sentencing continuances requested by Mr. Etherton while representing Mr. Lopez and for Mr. Lopez's benefit.

A time-for-sentencing computation based on the analysis above shows the court conducted the sentencing hearing for Mr. Lopez two days after the deadline to do so:

- April 26, 2012—guilty verdict rendered; countdown began
- 42 out of 40 remaining days elapsed
- June 7, 2012—sentencing continuance granted upon the defense's request
- July 9, 2012—sentencing continuance granted upon the defense's request
- August 15, 2012—counsel disqualified; sentencing continuance granted upon court's initiative
- September 4, 2012—sentencing hearing held 42 days after arrest, excluding continuances

Nonetheless, if a court violates the speedy sentencing statute, reversing the defendant's sentence "is not an automatic remedy." *State v. Anderson*, 92 Wn. App. 54, 60, 960 P.2d 975 (1998). Our legislature could not have intended such an absurd result, partly because "[t]he potential loss of protection to the public is not an acceptable consequence of a comparably strict enforcement of the 40-day time limit for sentencing." *Id.* Thus, we will not reverse for a violation of the speedy sentencing statute unless the defendant shows prejudice from the error. *See id.* at 60-61. We have already concluded the continuances were reasonable under the circumstances. Additionally, the two-day sentencing delay "did not affect the amount of time he served prior to the []sentencing hearing" and any "claims of prejudice amount to mere speculation." *State v. Modest*, 106 Wn. App. 660, 665, 24 P.3d 1116 (2001). Thus, we conclude the error is not reversible.

10

Finally, we turn to the constitutional provisions safeguarding speedy trial and sentencing rights. Complying with the speedy trial court rule and speedy sentencing statute does not necessarily satisfy constitutional protections. *See Ollivier*, 178 Wn.2d at 823. Both the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution provide a criminal defendant the right to a speedy trial.[5] The speedy trial right exists "to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself." *United States v. Ewell*, 383 U.S. 116, 120, 86 S. Ct. 773, 15 L. Ed. 2d 627 (1966); *accord Smith v. Hooey*, 393 U.S. 374, 377-78, 89 S. Ct. 575, 21 L. Ed. 2d 607 (1969). Courts have long assumed the speedy trial right encompasses a speedy sentencing right. *See Pollard v. United States*, 352 U.S. 354, 361, 77 S. Ct. 481, 1 L. Ed. 2d 393 (1957); *State v. Johnson*, 100 Wn.2d 607, 629, 674 P.2d 145 (1983), *overruled on other grounds by State v. Bergeron*, 105 Wn.2d 1, 711 P.2d 1000 (1985); *State v. Edwards*, 93 Wn.2d 162, 167 n.2, 606 P.2d 1224 (1980).

Speedy trial and sentencing rights are "consistent with delays and depends upon circumstances." *Beavers v. Haubert*, 198 U.S. 77, 87, 25 S. Ct. 573, 49 L. Ed. 950 (1905); *accord Ewell*, 383 U.S. at 120. Whether a delay in proceedings violates speedy trial or sentencing rights depends on four factors: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v.*

---

[5] We examine these constitutional provisions together because the analysis is "substantially the same" under each and the state provision does not afford a criminal

11

*Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). No one factor alone is necessary or sufficient to finding a violation of speedy trial or sentencing rights; we consider all of these factors together with other relevant circumstances. *Id.* at 533.

The first factor—the length of delay—involves a double inquiry. *Doggett v. United States*, 505 U.S. 647, 652, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992). The defendant must show the length of delay is more than ordinary and, thus, "presumptively prejudicial." *Barker*, 407 U.S. at 530; *see Doggett*, 505 U.S. at 652. If the defendant makes that threshold showing, we consider "as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Doggett*, 505 U.S. at 652. Generally, a delay of eight months to one year may be presumptively prejudicial. *See id.* at 652 n.1; *Barker*, 407 U.S. at 530; 5 WAYNE R. LAFAVE, JEROLD H. ISRAEL, NANCY J. KING & ORIN S. KERR, CRIMINAL PROCEDURE § 18.2(b), at 119 (3d ed. 2007).

The over two-year delay between Mr. Lopez's arrest and guilty verdict is presumptively prejudicial. *See Ollivier*, 178 Wn.2d at 828 (concluding a 23-month trial delay was presumptively prejudicial); *State v. Iniguez*, 167 Wn.2d 273, 292, 217 P.3d 768 (2009) (concluding an eight-month trial delay was presumptively prejudicial). But the over four-month delay between Mr. Lopez's guilty verdict and sentencing is not presumptively prejudicial.[6] *See* LAFAVE, ISRAEL, KING & KERR, *supra* (quoting Gregory

---

defendant greater protection than the federal provision. *State v. Iniguez*, 167 Wn.2d 273, 290, 217 P.3d 768 (2009).

[6] Regardless, Mr. Lopez cannot show the over four-month sentencing delay was "purposeful or oppressive." *Pollard*, 352 U.S. at 361; *accord Johnson*, 100 Wn.2d at 629; *Edwards*, 93 Wn.2d at 167 n.2.

12

P.N. Joseph, *Speedy Trial Rights in Application*, 48 FORDHAM L. REV. 611, 623 n.71 (1980)) (suggesting a national consensus that a delay of less than five months is not sufficiently prejudicial to merit further constitutional analysis); *cf. State v. Ellis*, 76 Wn. App. 391, 395, 884 P.2d 1360 (1994) (concluding a two-year sentencing delay was presumptively prejudicial); *State v. Sterling*, 23 Wn. App. 171, 176, 596 P.2d 1082 (1979) (same). Therefore, we summarily dismiss Mr. Lopez's speedy sentencing contention and limit our remaining analysis to his speedy trial contention.

While the two-year trial delay was one year longer than the bare minimum needed to trigger judicial examination of Mr. Lopez's speedy trial contention, the delay was not so grossly disproportionate to the nature and complexity of the charges as to give this factor controlling status. Additional obstacles included the voluminous evidence and Mr. Lopez's ongoing competency issues hindering his ability to assist in his defense. Thus, the first factor weighs in the State's favor. *See Ollivier*, 178 Wn.2d at 830-31.

The second factor—the reason for delay—partly considers blame. *See Doggett*, 505 U.S. at 651; *Ollivier*, 178 Wn.2d at 831. Defendants who knowingly and voluntarily cause or contribute to a delay waive speedy trial rights. *Barker*, 407 U.S. at 529; *Iniguez*, 167 Wn.2d at 284. The defendant is bound by a delay defense counsel requests while representing the defendant's interests. *Vermont v. Brillon*, 556 U.S. 81, 90-91, 94, 129 S. Ct. 1283, 173 L. Ed. 2d 231 (2009); *Ollivier*, 178 Wn.2d at 832. Even where, as here, defense counsel requests a continuance over the defendant's objection, the delay is chargeable to the defendant so long as defense counsel sought the

13

continuance to adequately prepare and provide effective assistance. *See Ollivier*, 178 Wn.2d at 834. Because Mr. Etherton requested the challenged trial continuances in the course of representing Mr. Lopez's interests, the delay is chargeable to Mr. Lopez. Further, Mr. Lopez caused much of the delay himself by "churning through the various attorneys who represented him"; "each new lawyer . . . required time to review the case and to prepare for trial." *State v. Verrecchia*, 766 A.2d 377, 385 (R.I. 2001). The State aptly argued, "Mr. Etherton is the fourth counsel, because [nearly] every time we get close to trial . . . [i]t's been Mr. Lopez' request to get new counsel, and that's played a significant role in the delay of this case." Report of Proceedings (RP) (Nov. 30, 2011) at 14. Thus, the second factor weighs in the State's favor.

The third factor—the defendant's past assertion—considers whether, in what manner, and to what extent the defendant previously invoked his or her speedy trial right. *See Barker*, 407 U.S. at 528-29; *Iniguez*, 167 Wn.2d at 294. We generally accord the defendant's assertion "strong evidentiary weight." *Barker*, 407 U.S. at 531. But we may still "weigh the frequency and force of the objections." *Id.* at 529. Mr. Lopez repeatedly asserted his speedy trial right. But "his objections cannot be given effect when his own counsel sought the continuances to prepare for trial." *Ollivier*, 178 Wn.2d at 840. Thus, the third factor weighs in favor of neither Mr. Lopez nor the State. *See id.* at 839-40.

The fourth factor—prejudice to the defendant—ordinarily requires actual, particularized prejudice. *See Ollivier*, 178 Wn.2d at 840, 842. Prejudice to the defendant may include "'oppressive pretrial incarceration,' 'anxiety and concern of the

14

accused,' and 'the possibility that the [accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence." *Doggett*, 505 U.S. at 654 (alteration in original) (quoting *Barker*, 407 U.S. at 532); *see Ewell*, 383 U.S. at 120. Mr. Lopez does not show the two years of pretrial incarceration were oppressive. Two years "is not, on its face, oppressive[ because p]eriods of incarceration as long or longer have been found not oppressive." *Ollivier*, 178 Wn.2d at 844. Mr. Lopez has not shown his anxiety and concern was unusual enough to be prejudicial. Anxiety and concern "'is always present to some extent, and thus absent some unusual showing is not . . . determinative in defendant's favor.'" *Id.* at 845 (quoting LAFAVE, ISRAEL, KING & KERR, *supra*, 18.2(e), at 130). Finally, Mr. Lopez unpersuasively argues the State was able to develop video evidence after the December 12, 2011 delay that undermined his defense. But when Mr. Etherton requested the continuance to view potentially exculpatory evidence, neither party had reviewed the State's newly discovered video evidence. We weigh any impairment to Mr. Lopez's defense against this benefit. *See Ollivier*, 178 Wn.2d at 845. Mr. Lopez fails to show "'the possibility that the [accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence." *Doggett*, 505 U.S. at 654 (alteration in original) (quoting *Barker*, 407 U.S. at 532); *see Ewell*, 383 U.S. at 120. Thus, the fourth factor weighs in the State's favor.

Therefore, because none of the factors weigh in Mr. Lopez's favor, we conclude the delay in proceedings did not violate his speedy trial right under the Sixth Amendment or article I, section 22.

15

## B. Ineffective Assistance of Counsel

Mr. Lopez contends he received ineffective assistance of counsel because Mr. Etherton lacked diligence leading to delays causing a conflict of interest that caused appointment of new counsel and further delay for new counsel to prepare. We review an ineffective assistance of counsel claim de novo. *In re Pers. Restraint of Fleming*, 142 Wn.2d 853, 865, 16 P.3d 610 (2001).

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 & n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970); *Yarborough v. Gentry*, 540 U.S. 1, 5, 124 S. Ct. 1, 157 L. Ed. 2d 1 (2003). To prove counsel gave ineffective assistance, the defendant must show "counsel's performance was deficient" and "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Failure to show either element defeats the claim. *Id.* at 697.

Deficient performance occurs if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. This standard requires "reasonableness under prevailing professional norms" and "in light of all the circumstances." *Id.* at 688, 690. The defendant must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To do so, the defendant must show counsel's performance cannot be explained as a reasonable strategic or tactical decision. *Id.*

Prejudice occurs if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at

694. A reasonable probability of a different result exists where counsel's deficient performance "undermine[s] confidence in the outcome." *Id.* The defendant "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693. Instead, the defendant "has . . . the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Id.* at 696. This standard requires evaluating the totality of the record. *Id.* at 695.

The defendant may prove counsel gave ineffective assistance by showing he or she had a conflict of interest in representing the defendant. *Glasser v. United States,* 315 U.S. 60, 75, 62 S. Ct. 457, 86 L. Ed. 680 (1942). But a conflict of interest is not, per se, ineffective assistance. *Holloway v. Arkansas,* 435 U.S. 475, 482, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978). Mr. Lopez does not show any effect from Mr. Etherton's conflict except delay. When the trial court is not confronted with or alerted to a possible conflict of interest, the defendant must, on review, show "an actual conflict of interest adversely affected [counsel]'s performance." *Cuyler v. Sullivan,* 446 U.S. 335, 348, 350, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980). This, Mr. Lopez fails to do.

Mr. Lopez argues Mr. Etherton's repeated requests for continuances over Mr. Lopez's personal objection should have informed the court of a possible conflict of interest, triggering its duty to take required action. Mr. Lopez argued Mr. Etherton had a conflict of interest on both December 7, 2011 and July 9, 2012. But no conflict of interest actually arose until August 7, 2012, when Mr. Lopez filed a pro se motion to dismiss, essentially accusing Mr. Etherton of violating Mr. Lopez's speedy trial and sentencing rights. That motion divided Mr. Etherton's loyalties because representing

17

Mr. Lopez's interests in it would require Mr. Etherton to either testify regarding material facts or take a defense strategy contrary to his own interests. *See* 3 LAFAVE, ISRAEL, KING & KERR, *supra*, § 11.9(a), at 928, 930. The situation was remedied by Mr. Etherton's withdrawal as Mr. Lopez's attorney and appointment of Mr. Johnson. Thus, Mr. Lopez has already obtained the proper remedy and we cannot provide him no further relief. *See Orwick v. City of Seattle*, 103 Wn.2d 249, 253, 692 P.2d 793 (1984); *In re Det. of Cross*, 99 Wn.2d 373, 376-77, 662 P.2d 828 (1983).

To the extent Mr. Lopez argues, the conflict of interest began emerging sooner than July 9, 2012, he fails to show it was an actual conflict of interest adversely affecting Mr. Etherton's performance. "[W]e generally presume that the lawyer is fully conscious of the overarching duty of complete loyalty to his or her client." *Burger v. Kemp*, 483 U.S. 776, 784, 107 S. Ct. 3114, 97 L. Ed. 2d 638 (1987). Mr. Etherton requested the continuances in the course of representing Mr. Lopez's interests, primarily because Mr. Etherton needed the continuances to adequately prepare and provide effective assistance.[7] While disagreements arose between Mr. Etherton and Mr. Lopez, their interests did not actually diverge with respect to any course of action and Mr. Etherton did not choose something contrary to Mr. Lopez's interests. Mr. Etherton did not actively represent conflicting interests.

---

[7] Again, Mr. Lopez argues the valid reasons for these continuances were somehow negated by a hypothetical ambiguity over who was representing him. And again, his argument is unpersuasive. Mr. Etherton presented a substitution of counsel form and the court orally approved it on August 17, 2011. While Mr. Etherton did not file this form until December 7, 2011, he continued appearing on Mr. Lopez's behalf so that it was clear Mr. Etherton alone was representing Mr. Lopez.

Next, Mr. Lopez argues while Mr. Etherton claimed he needed the continuances for strategic or tactical reasons. A strategic or tactical decision is no less reasonable simply because hindsight reveals it was unfruitful or unsuccessful. *See State v. Grier*, 171 Wn.2d 17, 43, 246 P.3d 1260 (2011). Mr. Lopez states nothing more than a personal opinion that Mr. Etherton lacked diligence. This opinion is not enough to overcome the strong presumption that Mr. Etherton's performance falls within the wide range of reasonable professional assistance. Likewise, this opinion is not enough to show a reasonable probability that, but for Mr. Etherton's performance, the trial and sentencing hearing would have produced different results.

Finally, Mr. Lopez notes how, at the sentencing hearing, Mr. Johnson had been involved in the case for a little over two weeks and expressed concerns about the disadvantages he faced because he did not attend trial, and therefore, could not develop the best sentencing arguments. Mr. Lopez does not even attempt to relate these facts to the burden he must prove. These facts do not overcome the strong presumption Mr. Johnson's performance falls within the wide range of reasonable professional assistance and do not show a reasonable probability that, but for Mr. Johnson's performance, the sentencing hearing would have produced a different result.

In sum, Mr. Lopez has not proved counsel performed deficiently or prejudiced the defense. Therefore, Mr. Lopez received effective assistance of counsel.

## C. Offender Score

The issue is whether the sentencing court miscalculated Mr. Lopez's offender score. He contends the washout provision of RCW 9.94A.525(2)(c) required the court

to exclude his prior class C felony conviction for possessing a controlled substance because the State presented no evidence of his release date, and more than five years had elapsed since the date of his judgment and sentence. The State agrees we should remand to properly determine Mr. Lopez's offender score and resentence him, if necessary. We conclude this is an appropriate resolution.

### D. Statement of Additional Grounds for Review (SAG)

First, Mr. Lopez expresses speedy trial concerns. We reject Mr. Lopez's concern because it repeats matters adequately addressed by his appellate counsel's brief and rejected above. *See* RAP 10.10(a) (providing the purpose of a SAG is to "identify and discuss those matters which the defendant/appellant believes have not been adequately addressed by the brief filed by the defendant/appellant's counsel").

Second, Mr. Lopez expresses evidence sufficiency concerns. He argues his first degree robbery conviction lacks sufficient evidence because he did not take personal property from Ms. Gonzalez's person; he did not intend to commit theft because he was intoxicated and suicidal, and therefore had diminished capacity; he lived with and had an irregular romantic relationship with her; and it is logically impossible for a person to rob a housemate or romantic partner.

Evidence is sufficient to support a guilty verdict if "'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (emphasis omitted) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). The essential elements of first

20

degree robbery, under the to-convict instruction given here, include (1) "unlawfully t[aking] personal property from the person, or in the presence of, another"; (2) acting with "inten[t] to commit theft of the property"; (3) committing the taking "against the person's will by the . . . use or threatened use of immediate force, violence, or fear of injury to that person"; (4) using "force or fear . . . to obtain or retain possession of the property or to prevent or overcome resistance to the taking of that property"; and (5) "inflict[ing] bodily injury" "in the commission of these acts, or in the immediate flight therefrom." Clerk's Papers (CP) at 116; *accord* CP at 114-15; RCW 9A.56.190, .200(1)(a)(iii); *State v. Kjorsvik*, 117 Wn.2d 93, 98, 812 P.2d 86 (1991).

Mr. Lopez's evidence sufficiency challenge "admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). The State presented evidence addressing every fact it needed to prove. The jury apparently disbelieved Mr. Lopez's version of all dispositive factual issues. We defer to the jury's assessment of conflicting testimony, witness credibility, and evidence weight. *State v. Carver*, 113 Wn.2d 591, 604, 781 P.2d 1308, 789 P.2d 306 (1989). Viewing the evidence in the light most favorable to the State, a rational jury could have found the essential elements of first degree robbery beyond a reasonable doubt. Therefore, sufficient evidence supports Mr. Lopez's first degree robbery conviction.

Third, Mr. Lopez expresses concern regarding the effectiveness of his trial attorney. Mr. Lopez begins by challenging Mr. Etherton's conflict of interest. We reject

21

Mr. Lopez's challenge because it repeats matters adequately addressed by his appellate counsel's brief and rejected above. *See* RAP 10.10(a).

Next, Mr. Lopez challenges Mr. Etherton's strategic and tactical decisions regarding which witnesses to call, how to impeach witnesses, and whether to inform witnesses they may be charged with perjury for lying. But these decisions do not fall below an objective standard of reasonableness and do not undermine confidence in the trial outcome. *See Strickland*, 466 U.S. at 688, 694.

Mr. Lopez challenges Mr. Etherton's alleged failure to communicate with Mr. Lopez about evidentiary issues. But this matter is outside our record. *See State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995) (stating an appellate court may not consider matters outside the record when reviewing an ineffective assistance of counsel claim on direct appeal). Additionally, the absence of a meaningful relationship between Mr. Etherton and Mr. Lopez does not prove Mr. Etherton performed deficiently or prejudiced the defense. *See Morris v. Slappy*, 461 U.S. 1, 13-14, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1983); *Strickland*, 466 U.S. at 687.

Mr. Lopez challenges Mr. Etherton's decision not to investigate his speedy trial concerns upon request. But this decision concerns the means of representation and is best left to counsel's knowledge and skill. *See* RPC 1.2(a) & cmts. 1-2. As the section above concludes, no speedy trial violation occurred. Thus, Mr. Etherton did not perform deficiently or prejudice the defense. *See Strickland*, 466 U.S. at 687.

Finally, Mr. Lopez challenges Mr. Etherton's failure to request a jury instruction on reckless driving as a lesser included offense of the second and third degree

22

assaults. The court may convict a defendant of a lesser offense necessarily included in a charged offense. RCW 10.61.006; *Beck v. Alabama*, 447 U.S. 625, 634, 100 S. Ct. 2382, 65 L. Ed. 2d 392 (1980). If an offense is lesser included, the court must instruct the jury on it when either party requests. *State v. Workman*, 90 Wn.2d 443, 447, 584 P.2d 382 (1978); *State v. Mak*, 105 Wn.2d 692, 745, 747, 718 P.2d 407 (1986), *overruled on other grounds by State v. Hill*, 123 Wn.2d 641, 870 P.2d 313 (1994). An offense is lesser included if it satisfies a legal prong and a factual prong. *Workman*, 90 Wn.2d at 447-48. Under the legal prong, "each of the elements of the lesser offense must be a necessary element of the offense charged." *Id.* A lesser offense satisfies the legal prong if its elements are invariably part of the charged offense so it is impossible to commit the charged offense without committing the lesser offense. *State v. Harris*, 121 Wn.2d 317, 320, 323, 326, 849 P.2d 1216 (1993).

The sole element of second degree assault, under the to-convict instruction given here, is "assault[ing] [another] with a deadly weapon." CP at 108; *accord* CP at 107; RCW 9A.36.021(1)(c). A deadly weapon is "any weapon, device, instrument, substance, or article, including a vehicle, which under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm." CP at 124; *accord* RCW 9A.04.110. The elements of third degree assault, under the to-convict instruction given here, include (1) "caus[ing] bodily harm to [another]," (2) causing the physical injury "by a weapon or other instrument or thing likely to produce bodily harm," and (3) acting with "criminal negligence." CP at 110; *accord* CP at 109; RCW 9A.36.031(1)(d). The elements of

23

reckless driving include (1) "driv[ing] any vehicle" and (2) acting in "willful or wanton disregard for the safety of persons or property." RCW 46.61.500(1).

Reckless driving is different from second and third degree assault. While a person must drive a vehicle to commit reckless driving, a person can commit second and third degree assault without driving a vehicle. Therefore, not all elements of reckless driving are necessary elements of second and third degree assault. It follows that reckless driving does not satisfy the legal prong and is not a lesser included offense of second or third degree assault. The law simply does not support Mr. Lopez's challenge. Therefore, Mr. Etherton did not perform deficiently or prejudice the defense. In sum, Mr. Lopez received effective assistance of counsel.

Fourth, Mr. Lopez expresses concern regarding prosecutorial misconduct. He argues the State violated due process principles by allowing a prosecution witness to lie and offering corroborative evidence vouching for prosecution witnesses.

To prove prosecutorial misconduct occurred, the defendant must show the prosecutor's conduct was "'improper and prejudicial in the context of the entire record and the circumstances at trial.'" *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011) (quoting *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)). The prosecutor's conduct is prejudicial if it is substantially likely to affect the jury's verdict. *State v. Pirtle*, 127 Wn.2d 628, 672, 904 P.2d 245 (1995). Where the defendant does not object to the prosecutor's conduct at trial, he or she waives any error claim arising from it unless it is so "flagrant and ill-intentioned" as to evince a "marked and enduring" prejudice no curative instruction can neutralize. *State v. Charlton*, 90 Wn.2d 657, 661,

24

No. 31168-6-III
State v. Lopez

585 P.2d 142 (1978) (citing State v. Morris, 70 Wn.2d 27, 33, 422 P.2d 27 (1966)); see State v. Belgarde, 110 Wn.2d 504, 507, 755 P.2d 174 (1988).

It is improper for a prosecutor to knowingly solicit or fail to correct false evidence. See Napue v. Illinois, 360 U.S. 264, 269, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959). But Mr. Lopez cannot establish the evidence was false or the prosecutor had knowledge. It is improper for a prosecutor to vouch for a witness by expressing his or her personal belief in the witness's veracity or indicating unoffered evidence supports the witness's testimony. State v. Ish, 170 Wn.2d 189, 196, 241 P.3d 389 (2010); United States v. Roberts, 618 F.2d 530, 533 (9th Cir. 1980). But Mr. Lopez cannot show the prosecutor engaged in either form of vouching. And, Mr. Lopez cannot show the prosecutor's conduct was prejudicial. Therefore, the State did not violate due process principles.

Fifth, Mr. Lopez expresses concern regarding prosecutorial vindictiveness. He argues the State violated due process principles by increasing the charges against him from fourth degree assault to first degree robbery in order to harass him and retaliate against him for requesting a mistrial.

Due process principles prohibit prosecutorial vindictiveness. See Blackledge v. Perry, 417 U.S. 21, 94 S. Ct. 2098, 40 L. Ed. 2d 628 (1974); United States v. Goodwin, 457 U.S. 368, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982). "Prosecutorial vindictiveness occurs when 'the government acts against a defendant in response to the defendant's prior exercise of constitutional or statutory rights.'" State v. Korum, 157 Wn.2d 614, 627, 141 P.3d 13 (2006) (quoting United States v. Meyer, 810 F.2d 1242, 1245 (D.C. Cir. 1987)). Prosecutorial action is not vindictive unless "'designed to penalize a

25

defendant for invoking legally protected rights.'" *Id.* (quoting *Meyer*, 810 F.2d at 1245) (emphasis in original). We presume prosecutorial action is vindictive if the defendant proves "'all of the circumstances, when taken together, support a realistic likelihood of vindictiveness.'" *Id.* (quoting *Meyer*, 810 F.2d at 1246). Mr. Lopez's bare assertions fail to meet this standard. Therefore, the State did not violate due process principles.

Finally, Mr. Lopez expresses concerns regarding double jeopardy. He argues the retrial violated double jeopardy principles because the State, desiring to increase the charges against Mr. Lopez, purposefully introduced prejudicial evidence intending to goad him into moving for a mistrial.

Double jeopardy principles prohibit a second trial for the same offense if jeopardy already attached and terminated in an earlier prosecution. *Sattazahn v. Pennsylvania*, 537 U.S. 101, 106, 123 S. Ct. 732, 154 L. Ed. 2d 588 (2003); *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989). Jeopardy attaches in a jury trial when the jury is impaneled and sworn. *Serfass v. United States*, 420 U.S. 377, 388, 95 S. Ct. 1055, 43 L. Ed. 2d 265 (1975). Where, as here, a court declares a mistrial at the defendant's behest, jeopardy does not terminate, so as to bar a retrial, unless prosecutorial or judicial misconduct necessitated the mistrial and was "intended to 'provoke' the defendant into moving for a mistrial." *Oregon v. Kennedy*, 456 U.S. 667, 672-73, 679, 102 S. Ct. 2083, 72 L. Ed. 2d 416 (1982); *see United States v. Dinitz*, 424 U.S. 600, 611, 96 S. Ct. 1075, 47 L. Ed. 2d 267 (1976).

26

No. 31168-6-III
*State v. Lopez*

The trial court granted Mr. Lopez's mistrial motion after a prosecution witness implied, without prompting, that Mr. Lopez had previously been imprisoned. The transcript reads:

> Q  Do you have any knowledge of exactly how long it took to find [Mr. Lopez] between the incident in Richland and then in Benton City?
> A  It was about an hour.
> Q  If you could continue.
> A  So I'm in the area of the jail, . . . and they began to get successful pings and I was coming in the Benton City area. I'm the Benton City deputy so I said, man, I got to get to Benton City. I ran code to Benton City. The information was this guy is armed with a knife and he didn't want to go back to prison.

RP (March 20, 2012) at 82-83. Mr. Lopez fails to show the State purposefully introduced this evidence intending to goad him into moving for a mistrial. Therefore, jeopardy did not terminate upon the mistrial. In sum, the retrial did not violate double jeopardy principles.

Affirmed and remanded.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Brown, A.C.J.

WE CONCUR:

Korsmo, J.

Fearing, J.

27